UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE KOELTL

MILBANK 1551 NICHOLAS, LLC and MILBANK 272 SHERMAN, LLC,

Plaintiffs,

-against-

1551 ST. NICHOLAS, LLC, 272 SHERMAN, LLC, and FIRST AMERICAN TITLE INSURANCE COMPANY OF NEW YORK, as Escrow Agent,

Defendants.

'07 CIV 9834

Civil Action No.:

**COMPLAINT**




Plaintiffs, Milbank 1551 Nicholas, LLC (the "St. Nicholas Purchaser") and Milbank 272 Sherman, LLC (the "Sherman Purchaser"), by their attorneys, Brown Rudnick Berlack Israels LLP, as and for their Complaint against defendants 1551 St. Nicholas, LLC (the "St. Nicholas Seller"), 272 Sherman, LLC (the "Sherman Seller"), and First American Title Company of New York, as Escrow Agent (the "Escrow Agent"), respectfully allege as follows:

**THE PARTIES**

1. Plaintiff St. Nicholas Purchaser is a Delaware limited liability company, with its principal place of business at 660 South Figueroa Street, Los Angeles, California 90017. The St. Nicholas Purchaser is the assignee of the interest of Milbank Real Estate Services, Inc. ("Milbank Real Estate"), as contract vendee, in and to a contract of sale with the St. Nicholas Seller to purchase a certain parcel of real property located at 1551 St. Nicholas Avenue, New York, New York (the "St. Nicholas Property").

2. Plaintiff Sherman Purchaser is a Delaware limited liability company, with its principal place of business at 660 South Figueroa Street, Los Angeles, California 90017. The Sherman Purchaser is the assignee of Milbank Real Estate's interest, as contract vendee, in and

to a contract of sale with the Sherman Seller to purchase certain real property located at 272 Sherman Avenue, New York, New York (the "Sherman Property").

3. Upon information and belief, defendant St. Nicholas Seller is a New York domestic limited liability company, which entered into a written contract of sale by which it agreed to sell, as contractor vendor, the St. Nicholas Property to Milbank Real Estate (and its assignee, the St. Nicholas Purchaser). The St. Nicholas Seller's only known address is that which is listed in the underlying written contract of sale, and which it has registered for service of process with the Division of Corporations for the New York State Department of State, as being c/o New Realty Management, Inc., 450 Seventh Avenue, New York, New York, 10123.

4. Upon information and belief, defendant Sherman Seller is a New York domestic limited liability company, which entered into a written contract of sale by which it agreed to sell, as contract vendor, the Sherman Property to Milbank Real Estate (and its assignee, the Sherman Purchaser). The Sherman Seller's only known address is that which is listed in the underlying written contract of sale, and which it has registered for service of process with the Division of Corporations for the New York State Department of State, as being c/o New Realty Management, Inc., 450 Seventh Avenue, New York, New York, 10123.

5. Upon information and belief, defendant Escrow Agent is a New York domestic company, with its principal place of business at 633 Third Avenue, New York, New York 10017. Pursuant to the terms of written escrow agreements, Escrow Agent is responsible for holding in escrow the Nine Hundred Thousand Dollar and 00/100 Cents ($900,000.00) monetary deposit and Seven Hundred Twenty Thousand Dollar and 00/100 Cents ($720,000.00) monetary deposit made by Milbank Real Estate to the St. Nicholas Seller and Sherman Seller, respectively, in connection the purchases of St. Nicholas Property and the Sherman Property.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims at issue in this action pursuant to 28 U.S.C. § 1332(a)(2), in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because: (i) all defendants reside in this District; and (ii) a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## FACTS RELEVANT TO ALL COUNTS

### THE CONTRACTS OF SALE

#### A. The St. Nicholas Property

8. On or about February 22, 2007, Milbank Real Estate entered into an contract of sale with the St. Nicholas Seller (the "St. Nicholas Contract of Sale"), pursuant to which the St. Nicholas Seller agreed to sell, and Milbank Real Estate agreed to buy, the St. Nicholas Property for a purchase price of Nine Million Dollars and 00/100 Cents ($9,000,000.00). A true and accurate copy of the St. Nicholas Contract of Sale, including the First and Second Riders thereto and all other relevant schedules and documents constituting the St. Nicholas Contract of Sale, is annexed hereto and made a part hereof as Exhibit A.

9. Pursuant to the terms of the St. Nicholas Contract of Sale, the St. Nicholas Seller and Milbank Real Estate also entered into an escrow agreement with Escrow Agent, dated February 23, 2007 (the "St. Nicholas Escrow Agreement"), pursuant to which Milbank Real Estate agreed to pay, and Escrow Agent agreed to hold and maintain in escrow, a monetary deposit in the amount of Nine Hundred Thousand Dollars and 00/100 Cents ($900,000.00) (the "St. Nicholas Escrow Deposit"), to be applied towards the total purchase price of the Property.

(Ex. A, § 2.05(a)). The Escrow Payment was made payable to the Escrow Agent and receipt of the payment was acknowledged by the St. Nicholas Seller in the St. Nicholas Contract of Sale. (Ex. A, at Schedule C ¶ (a)). A true and accurate copy of the St. Nicholas Escrow Agreement is annexed hereto and made a part hereof as Exhibit B.

10. Pursuant to the terms of the St. Nicholas Escrow Agreement and the St. Nicholas Contract of Sale, the St. Nicholas Escrow Deposit served as a down payment for the purchase of the St. Nicholas Property and was to be held in escrow and delivered, among other ways, as follows: (i) to the St. Nicholas Seller, upon completion of the closing; or (ii) in the event of a default by the St. Nicholas Seller, to Milbank Real Estate. (Ex. A § 2.05(a); Ex. B ¶ 3(a)(iv)).

11. The St. Nicholas Contract of Sale also contained certain affirmative and specific representations by the St. Nicholas Seller to Milbank Real Estate regarding the St. Nicholas Property, including, *inter alia*: (i) that there existed no leases or tenancies other than those set forth in the rent schedule annexed to the Sherman Contract of Sale; (ii) that the rents were being collected on a current basis and there existed no arrearages in excess of one month; and (iii) that the rent roll annexed to the St. Nicholas Contract of Sale was true and correct as of the date the agreement was executed. (Ex. A § 4.03; *Id.* § 4.03(d); *Id.*, Second Rider ¶ 1(a)).

12. In connection with these representations, the St. Nicholas Seller also affirmed and represented as follows in the St. Nicholas Contract of Sale:

> None of the tenants have any lease or agreement conferring any rights or estate in the premises and there are no claims, counterclaims or offsets by any tenant, except as indicated on the rent schedule and said leases or agreements, if any, expire as indicated on said rent schedule and are presently in full force and effect without any modifications; that any and all leases which have not been exhibited to and initialed by or on behalf of the purchaser, contain no unusual clauses and all leases contain agreements fully subordinating them to any existing or future mortgage or mortgages in any amounts and on any terms.

(Ex. A, Second Rider ¶ 1(c)).

13. The St. Nicholas Contract of Sale further obligated the St. Nicholas Seller to deliver to Milbank Real Estate at closing "a current rent roll, certified by seller as being true and correct, together with a Schedule of Rent arrears, prepaid rents and rent escalations and adjustments," and the St. Nicholas Contract of Sale expressly provided Milbank Real Estate with the ability to cancel the contract and receive back the full St. Nicholas Escrow Deposit if the leases and/or rent rolls did not comply with the St. Nicholas Seller's representations:

> In the event the leases at closing are not in full force and effect and/or the rent being paid by the tenant [sic] twenty (20%) percent or less then on the rent roll as of the date of signing of the contract, [Purchaser] may cancel this contract and receive back the [the St. Nicholas Escrow Deposit] made on account of the purchase price.

(Ex. A, Second Rider ¶ 31; *Id.* ¶ 14(g)).

14. In the event that Milbank Real Estate were to cancel the St. Nicholas Agreement of Sale and request the return of the St. Nicholas Escrow Deposit, the Escrow Agent was required to release the funds to Milbank Real Estate within ten (10) days after giving notice of the request to the St. Nicholas Seller as follows:

> If for any reason the Closing does not occur and either party makes a written demand upon [Escrow Agent] for payment of such amount, Escrow [sic] shall give written notice to the other party of such demand. If [Escrow Agent] does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, [Escrow Agent] is hereby authorized to make such payment.

(Ex. A § 2.05(a)).

### B. <u>The Sherman Property</u>

15. On or about February 22, 2007, Milbank Real Estate also entered into an contract of sale with the Sherman Seller (the "Sherman Contract of Sale"), pursuant to which the Sherman Seller agreed to sell, and Milbank Real Estate agreed to buy, the Sherman Property for

a purchase price of Seven Million Two Hundred Thousand Dollars and 00/100 Cents ($7,200,000.00). A true and accurate copy of the Sherman Contract of Sale, including the First and Second Riders thereto and all other relevant schedules and documents constituting the Sherman Contract of Sale, is annexed hereto and made a part hereof as Exhibit C.

16. Pursuant to the terms of the Sherman Contract of Sale, the Sherman Seller, and Milbank Real Estate also entered into an escrow agreement with Escrow Agent, dated February 23, 2007 (the "Sherman Escrow Agreement"), pursuant to which Milbank Real Estate agreed to pay, and Escrow Agent agreed to hold and maintain, a monetary deposit in the amount of Seven Hundred and Twenty Thousand Dollars and 00/100 Cents ($720,000.00) (the "Sherman Escrow Deposit"), which was to applied towards the total purchase price of the Property. (Ex. C, § 2.05(a)). The Escrow Payment was made payable to the Escrow Agent and receipt of the payment was acknowledged by the Sherman Seller in the Sherman Contract of Sale. (Ex. C, Schedule C, ¶ (a). A true and accurate copy of the Sherman Escrow Agreement is annexed hereto and made a part hereof as Exhibit D.

17. Pursuant to the terms of the Sherman Escrow Agreement and the Sherman Contract of Sale, the Sherman Escrow Deposit served as a down payment for the purchase of the Sherman Property and was to be held in escrow and delivered, among other ways, as follows: (i) to the Sherman Seller upon completion of the closing; or (ii) in the event of a default by the Sherman Seller, to Milbank Real Estate. (Ex. C, § 2.05(a); Ex. D, ¶ 3(a)(iv)).

18. The Sherman Contract of Sale also contained certain affirmative and specific representations by the Sherman Seller to Milbank Real Estate regarding the Sherman Property, including, *inter alia*: (i) that there existed no leases or tenancies other than those set forth in the rent schedule annexed to the Sherman Contract of Sale; (ii) that the rents were being collected on

a current basis and there existed no arrearages in excess of one month; and (iii) that the rent roll annexed to the Sherman Contract of Sale was true and correct as of the date the agreement was executed. (Ex. C § 4.03; *Id.*, § 4.03(d); *Id.* Second Rider ¶ 1(a)).

19. In connection with these representations, the Sherman Seller also affirmed and represented as follows in the Sherman Contract of Sale:

> None of the tenants have any lease or agreement conferring any rights or estate in the premises and there are no claims, counterclaims or offsets by any tenant, except as indicated on the rent schedule and said leases or agreements, if any, expire as indicated on said rent schedule and are presently in full force and effect without any modifications; that any and all leases which have not been exhibited to and initialed by or on behalf of the purchaser, contain no unusual clauses and all leases contain agreements fully subordinating them to any existing or future mortgage or mortgages in any amounts and on any terms.

(Ex. C, Second Rider ¶ 1(c)).

20. The Sherman Contract of Sale further obligated the Sherman Seller to deliver to Milbank Real Estate at closing "a current rent roll, certified by seller as being true and correct, together with a Schedule of Rent arrears, prepaid rents and rent escalations and adjustments," and the Sherman Contract of Sale expressly provided Milbank Real Estate with the ability to cancel the contract and receive back the full Sherman Escrow Deposit if the leases and/or rent rolls did not comply with the Sherman Seller's representations:

> In the event the leases at closing are not in full force and effect and/or the rent being paid by the tenant [sic] twenty (20%) percent or less then on the rent roll as of the date of signing of the contract, Purchaser may cancel this contract and receive back the deposit made on account of the purchase price.

(Ex. C, Second Rider ¶ 14(g); *Id.* ¶ 31).

21. In the event that Milbank Real Estate were to cancel the Sherman Contract of Sale and request the return of the Sherman Escrow Deposit, the Escrow Agent was required to release

the funds to Milbank Real Estate within ten (10) days after giving notice of the request to the Sherman Seller as follows:

> If for any reason the Closing does not occur and either party makes a written demand upon [Escrow Agent] for payment of such amount, Escrow [sic] shall give written notice to the other party of such demand. If [Escrow Agent] does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, [Escrow Agent] is hereby authorized to make such payment.

(Ex. C, § 2.05(a)).

**THE CLOSINGS**

22. Since the selling entities were both represented by the same law firm, and since Milbank Real Estate was purchasing each of the properties, the property closings were scheduled to take place at the same time. The parties also determined to have a pre-closing on August 2, 2007 (during which time documents would be executed and exchanged), and that an actual closing (during which time the closings would be completed and consummated with the exchange of the purchase prices for the deeds to the properties) would occur thereafter on August 3, 2007.

23. Certain aspects of the pre-closing took place on August 2, 2007, as scheduled. At that time, Milbank Real Estate assigned its interest in the St. Nicholas Contract of Sale to the St. Nicholas Purchaser and its interest in the Sherman Contract of Sale to the Sherman Purchaser. True and accurate copies of the respective Assignments of Contract of Sale are annexed hereto as Exhibit E and F.

24. On August 2, 2007, the parties also executed and exchanged certain other closing documents for both the St. Nicholas Property and the Sherman Property, and some of the relevant leases, rent histories and building records were presented to the Purchasers for examination.

25. At that time, the parties agreed to extend the actual closing date from August 3, 2007 to August 7, 2007, so as to, *inter alia*, allow the St. Nicholas and Sherman Sellers time to obtain and provide the St. Nicholas and Sherman Purchasers with any and all documents which the St. Nicholas and Sherman Sellers failed to provide on August 2, 2007.

**THE SELLERS' DEFAULTS UNDER THE**
**TERMS OF THE CONTRACTS OF SALE**

26. Prior to the closing scheduled for August 7, 2007, and based upon information which was provided to the St. Nicholas and Sherman Purchasers on August 2, 2007, the St. Nicholas and Sherman Purchasers determined that the St. Nicholas and Sherman Sellers were in breach of the St. Nicholas and Sherman Contracts of Sale, respectively, by, *inter alia*, the fact that the rents being paid by the tenants at the St. Nicholas and Sherman Properties were "twenty (20%) percent or less than on the rent roll as of the date of signing of the [St. Nicholas and Sherman Contracts of Sale]" and there were rents owed for more than thirty (30) days, as required by those agreements. (Ex. A, Second Rider ¶ 31; Ex. C, Second Rider ¶ 31).

27. On August 7, 2007, both the St. Nicholas and the Sherman Purchasers, through their real estate counsel, tendered payment for the balances due under both Contracts of Sale, were ready, willing and able to close and, by a letter dated August 7, 2007 (the "Default Letter"), simultaneously notified the Sellers' counsel of the Sellers' material breaches under the respective Contracts of Sale, holding both Sellers in willful default based upon the Sellers' willful misrepresentations to the Purchasers. In relevant part, the Default Letter, which was written on behalf of both the Sherman and St. Nicholas Purchasers, stated:

> Enclosed with this letter are copies of bank tellers' checks for [the remaining balances due under the St. Nicholas and Sherman Contracts of Sale] in the total mount of $14,572,321.00.

Even though the Purchaser stands ready, willing and able to tender the balance of $14,572,321.00 for the [St. Nicholas and Sherman Properties], it is the position of the Purchaser that the Seller has defaulted on various terms, conditions and provisions of the [St. Nicholas and Sherman Contracts of Sale] and is therefore not in a position to close title for these two (2) properties. In particular the Seller has defaulted under the Contract[s] of Sale for the following reasons:

1. Seller misrepresented to Purchaser that "there are no rents more than 30 days past due";

2. Seller misrepresented to Purchaser that leases on the rent schedule expire as indicated and are in full force and effect;

3. Seller misrepresented to Purchaser that "all space as listed on the annexed rent roll is legally occupied . . . and a permanent certificate of occupancy for the building as presently constituted and used is in existence";

4. Seller misrepresented to Purchaser that the Premises would be maintained in its present order and repair;

5. Seller misrepresented to Purchaser that "any repairs or alterations or equipment to be furnished and pursuant to terms of any lease agreements or as required by law will be done or supplied by Seller at Seller's own cost before the closing."

Each of the foregoing misrepresentations set forth [sic] complete and independent basis for the [St. Nicholas and Sherman Contracts of Sale] to be terminated. The foregoing defaults by [the St. Nicholas and Sherman Sellers] are illustrative only and do not include various other defaults by the [St. Nicholas and Sherman Sellers] under the [St. Nicholas and Sherman Contracts of Sale] which have not been enumerated.

Finally, for the reasons set forth below, Purchaser is asserting its right to cancel and terminate the Contract of Sale. In this respect, since (a) various leases listed on the respective rent schedules to the Contract of Sale were not in full force and effect as of the closing and/or (b) rent being paid by tenants at the closing were twenty (20%) per cent or less than on the rent roll as of the date of the signing of the Contract of Sale, Purchaser may cancel the Contract of Sale and receive back the deposit made on account of the purchase price, in accordance with paragraph number 31 of the Contract of Sale. Accordingly, Purchaser hereby elects to cancel and terminate the Contract of Sale and receive a full refund of the $720,000.00 contract deposit together with accrued interest for [the Sherman Property]

> and the $900,000.00 contract deposit together with accrued interest for [the St. Nicholas Property].

A true and accurate copy of the Default Letter is annexed hereto and made a part hereof as Exhibit G.

28. The Default Letter, dated August 7, 2007, was transmitted to, and received by, Sellers' counsel on August 7, 2007.

29. On the same day that it received the Default Letter, Sellers' counsel responded to Purchasers' counsel with a one line letter, stating "We hereby reject your tender as it is past the close of business on August 7, 2007." A true and accurate copy of the Rejection Letter is annexed hereto and made a part hereof as Exhibit H.

**PURCHASERS' REQUEST FOR THE**
**<u>RETURN OF THE ESCROW DEPOSITS</u>**

30. On August 8, 2007, the St. Nicholas Purchaser's real estate counsel sent a letter to the Escrow Agent, wherein he advised the Escrow Agent of Purchaser's election of its contractual right to cancel and terminate the St. Nicholas Contract of Sale based upon the St. Nicholas Seller's defaults, and demanded the return of the entire St. Nicholas Escrow Deposit, with interest, in accordance with the terms of the St. Nicholas Escrow Agreement. A true and accurate copy of this letter is annexed hereto and made a part hereof as Exhibit I.

31. On the same date, the Sherman Purchaser's real estate counsel sent an identical letter to the Escrow Agent with respect to the Sherman Property and also demanded the return of the Sherman Escrow Deposit, with interest. A true and accurate copy of this letter is annexed hereto and made a part hereof as Exhibit J.

32. By letter dated August 8, 2007, counsel for both Sellers wrote to the Escrow Agent, demanding that the St. Nicholas Escrow Deposit and the Sherman Escrow Deposit be

released to the respective Sellers. A true and accurate copy of this letter is annexed hereto and made a part hereof as Exhibit K.

33. On August 13, 2007, the Escrow Agent responded to both Sellers' counsel and Purchasers' counsel, and the Escrow Agent advised that since it had received conflicting demands for the Escrow Deposits, it would not release either Escrow Deposit until it received joint written instructions from the parties or an order of the court requiring the return of the funds. A true and accurate copy of this letter is annexed hereto and made a part hereof as Exhibit L.

**COUNT I**
**(Breach of Contract)**
**(By the St. Nicholas Purchaser against the St. Nicholas Seller)**

34. Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "33" hereof as though set forth fully herein.

35. At all relevant times, the St. Nicholas Purchaser performed all of the terms, conditions and obligations required of it under the St. Nicholas Contract of Sale, and in reliance upon the St. Nicholas Seller's representations and warranties, tendered the St. Nicholas Escrow Deposit in connection with the purchase of the St. Nicholas Property.

36. The St. Nicholas Seller's conduct as aforesaid constitutes a willful and material breach of the St. Nicholas Contract of Sale. Among other things, St. Nicholas Seller breached its obligations to the St. Nicholas Purchaser under the express and implied terms of the St. Nicholas Contract of Sale by misrepresenting to the St. Nicholas Purchaser that: (i) there are no rents more than 30 days past due; (ii) the leases on the rent schedule expire as indicated and are in full force and effect; (iii) all space as listed on the annexed rent roll is legally occupied and a permanent certificate of occupancy for the building as presently constituted and used is in existence; (iv) the

St. Nicholas Property would be maintained in its present order and repair; and (v) any repairs or alterations or equipment to be furnished and pursuant to terms of any lease agreements or as required by law would be done or supplied by the St. Nicholas Seller at its own cost before the closing. In addition, the St. Nicholas Seller further breached its obligations to the St. Nicholas Purchaser by virtue of the fact that the rents being paid by the tenants at the St. Nicholas Property were twenty (20%) percent or less than on the rent roll as of the date of signing of the St. Nicholas Contract of Sale.

37. By virtue of the Default Letter, and pursuant to, *inter alia*, paragraph 31 of the Second Rider, the St. Nicholas Purchaser properly rescinded the St. Nicholas Contract of Sale.

38. Based upon the foregoing, the St. Nicholas Purchaser is entitled to: (i) immediate reimbursement and return of the St. Nicholas Escrow Deposit from the Escrow Agent, with interest thereon; and (ii) judgment against the St. Nicholas Seller in the amount of its reimbursable costs permitted under the Contract of Sale.

**COUNT II**
**(Breach of Contract)**
**(By the Sherman Purchaser against the Sherman Seller)**

39. Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "38" hereof as though set forth fully herein.

40. At all relevant times, the Sherman Purchaser performed all of the terms, conditions and obligations required of it under the Sherman Contract of Sale, and in reliance upon Sherman Seller's representations and warranties, tendered the Sherman Escrow Deposit in connection with the purchase of the Sherman Property.

41. The Sherman Seller's conduct as aforesaid constitutes a willful and material breach of the Sherman Contract of Sale. Among other things, the Sherman Seller breached its

obligations to the Sherman Purchaser under the express and implied terms of the Sherman Contract of Sale by misrepresenting to the Sherman Purchaser that: (i) there are no rents more than 30 days past due; (ii) the leases on the rent schedule expire as indicated and are in full force and effect; (iii) all space as listed on the annexed rent roll is legally occupied and a permanent certificate of occupancy for the building as presently constituted and used is in existence; (iv) the Sherman Property would be maintained in its present order and repair; and (v) any repairs or alterations or equipment to be furnished and pursuant to terms of any lease agreements or as required by law would be done or supplied by the Sherman Seller at its own cost before the closing. In addition, the Sherman Seller further breached its obligations to the Sherman Purchaser by virtue of the fact that the rents being paid by the tenants at the Sherman Property were twenty (20%) percent or less than on the rent roll as of the date of signing of the Sherman Contract of Sale.

42. By virtue of the Default Letter, and pursuant to, *inter alia*, paragraph 31 of the Second Rider, the Sherman Purchaser properly rescinded the Sherman Contract of Sale.

43. Based upon the foregoing, the Sherman Purchaser is entitled to: (i) immediate reimbursement and return of the Sherman Escrow Deposit from the Escrow Agent, with interest thereon; and (ii) judgment against the Sherman Seller in the amount of its reimbursable costs permitted under the Sherman Contract of Sale.

**COUNT III**
**(Declaratory Judgment)**
**(By the St. Nicholas Purchaser against the St. Nicholas Seller and the Escrow Agent)**

44. Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "43" hereof as though set forth fully herein.

45. An actual and justiciable controversy exists with respect to the St. Nicholas Seller's and St. Nicholas Purchaser's duties and obligations due and owing under the St. Nicholas Contract of Sale and Escrow Agent's obligations due and owing under the St. Nicholas Escrow Agreement.

46. Despite entering in the St. Nicholas Contract of Sale with the St. Nicholas Purchaser, the St. Nicholas Seller now seeks to avoid its default under the agreement and to prevent the return of the St. Nicholas Escrow Deposit to the St. Nicholas Purchaser, as the St. Nicholas Purchaser is entitled to under the terms of the St. Nicholas Contract of Sale.

47. In addition, the Escrow Agent refuses to return the St. Nicholas Escrow Deposit to the St. Nicholas Purchaser because it has received conflicting notifications from the St. Nicholas Purchaser and the St. Nicholas Seller as to which party is entitled to the funds.

48. Purchaser has no adequate remedy at law.

49. By reason of the foregoing, and in accordance with Federal Rule of Civil Procedure 57, the St. Nicholas Purchaser is entitled to a declaratory judgment declaring that the St. Nicholas Contract of Sale: (i) is and has been materially breached by the St. Nicholas Seller; (ii) is and has been properly rescinded by the St. Nicholas Purchaser; and (iii) that the St. Nicholas Purchaser is entitled to the immediate return of the St. Nicholas Escrow Deposit, with interest, by the Escrow Agent in accordance with paragraph 3(a)(iv) of the St. Nicholas Escrow

Agreement, and the recovery of costs as permitted by paragraph 13 of the St. Nicholas Contract of Sale.

**COUNT IV**
**(Declaratory Judgment)**
**(By the Sherman Purchaser against the Sherman Seller and the Escrow Agent)**

50. Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "49" hereof as though set forth fully herein.

51. An actual and justiciable controversy exists with respect to the Sherman Seller's and the Sherman Purchaser's duties and obligations due and owing under the Sherman Contract of Sale and Escrow Agent's obligations due and owing under the Sherman Escrow Agreement.

52. Despite entering in the Sherman Contract of Sale with Sherman Purchaser, the Sherman Seller now seeks to avoid its default under the agreement and to prevent the return of the Sherman Escrow Deposit to the Sherman Purchaser, as the Sherman Purchaser is entitled to under the terms of the Sherman Contract of Sale.

53. In addition, the Escrow Agent refuses to return the Sherman Escrow Deposit to the Sherman Purchaser because it has received conflicting notifications from the Sherman Purchaser and the Sherman Seller as to which party is entitled to the funds.

54. Purchaser has no adequate remedy at law.

55. By reason of the foregoing, and in accordance with Federal Rule of Civil Procedure 57, the Sherman Purchaser is entitled to a declaratory judgment declaring that the Sherman Contract of Sale: (i) is and has been materially breached by the Sherman Seller; (ii) is and has been properly rescinded by the Sherman Purchaser; and (ii) that the Sherman Purchaser is entitled to the immediate return of the Sherman Escrow Deposit, with interest, by Escrow

Agent in accordance with paragraph 3(a)(iv) of the Sherman Escrow Agreement, and the recovery of costs as permitted by paragraph 13 of the Sherman Contract of Sale.

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(i) As to the First Count: judgment directing the Escrow Agent to return to the St. Nicholas Purchaser the entire St. Nicholas Escrow Deposit in the amount of Nine Hundred Thousand Dollars and 00/100 Cents ($900,000.00), plus interest, and awarding the St. Nicholas Purchaser judgment against the St. Nicholas Seller for its reimbursable costs under the St. Nicholas Contract of Sale;

(ii) As to the Second Count: judgment directing Escrow Agent to return to the Sherman Purchaser the entire Sherman Escrow Deposit in the amount of Seven Hundred and Twenty Thousand Dollars and 00/100 Cents ($720,000.00), plus interest and awarding the Sherman Purchaser judgment against the Sherman Seller for its reimbursable costs under the Contract of Sale;

(iii) As to the Third Count: a declaratory judgment declaring that: (i) the St. Nicholas Seller has materially breached the St. Nicholas Contract of Sale; (ii) the St. Nicholas Contract of Sale has been properly rescinded by the St. Nicholas Purchaser; and (iii) the St. Nicholas Purchaser is entitled to (a) the immediate return of the St. Nicholas Escrow Deposit, with interest, by the Escrow Agent in accordance with paragraph 3(a)(iv) of the Escrow Agreement, and (b) the recovery of costs to be paid by the St. Nicholas Seller as permitted by paragraph 13 of the St. Nicholas Contract of Sale;

(iv) As to the Fourth Count: a declaratory judgment declaring that: (i) the Sherman Seller has materially breached the Sherman Contract of Sale; (ii) the Sherman Contract of Sale has been properly rescinded by the Sherman Purchaser; and (iii) the Sherman Purchaser

is entitled to (a) the immediate return of the Sherman Escrow Deposit, with interest, by the Escrow Agent in accordance with paragraph 3(a)(iv) of the Escrow Agreement, and (b) the recovery of costs to be paid by the Sherman Seller as permitted by paragraph 13 of the Sherman Contract of Sale; and

(v) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 6, 2007

BROWN RUDNICK BERLACK ISRAELS LLP

By: ______________________
David J. Molton (DM-1106)
Diane M. Nardi (DN-7472)

Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Telecopier: (212) 209-4801

Attorneys for Plaintiffs
Milbank 1551 Nicholas, LLC and
Milbank 272 Sherman, LLC